UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EITZEN BULK A/S** | **CIVIL ACTION** |
| **VERSUS** | **NO:   10-395** |
| **CAPEX INDUSTRIES, LTD.** | **SECTION: "C" (1)** |

**ORDER AND REASONS**

This matter comes before the Court on Defendant Capex Industries, LTD's ("Capex") Motion for a Reduction in the Amount of Security Pursuant to Rule E(6) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Foreclosure Actions. (Rec. Doc. 20). Plaintiff Eitzen Bulk A/S ("Eitzen") opposes the Motion. (Rec. Doc. 29). Having considered the memoranda of counsel, the record, and the applicable law, Defendant's motion is DENIED for the reasons stated below.

**I. Background**

This is an action in admiralty stemming from the breach of a charter party. On November 23, 2007, Plaintiff, as disponent owner, and Capex, as charterer, entered into a charter party for the transportation of four cargoes of petcoke in 2008. (Rec. Doc. 20-3 at 3). On August 8, 2008, Plaintiff claims that it entered into a substitute charter party with Probulk Carriers, Ltd. ("Probulk"), under which Probulk would provide a suitable vessel for the carriage of petcoke. *Id.* Plaintiff further alleges that Probulk entered into a similar charter party with Phoenix Bulk Carriers. *Id.* Plaintiff and Defendant agree that their contract dispute is governed by English law, which is the law specifically selected in their charter party. (Rec. Doc. 29 at 4).

In late 2008, Plaintiff alleges that Capex declined to provide the final cargo of petcoke and repudiated the balance of its charter with Plaintiff. *Id.* at 2. This repudiation set off a chain of events that allegedly caused Plaintiff to breach its charter party with Probulk, who in turn breached

1

its charter party with Phoenix. *Id.* at 3. All of these breach of contract claims are currently under arbitration in London. *Id.* at 7.

In December, 2008, Plaintiff commenced an action in the Southern District of New York and obtained a Rule B attachment directed at Capex's wire transfers moving through the New York banking system. *Id.* at 3. Later Plaintiff and Capex agreed to substitute a bond in the amount of $3.156 million for the withdrawal of the attachment. *Id.*

In March, 2009, Capex argued that Plaintiff's claims regarding its exposure to Probulk and Phoenix were in reality indemnity claims, and as such not ripe under English law. *Id.* at 5. The District Court agreed and found that since Plaintiff had failed to state a *prima facie* admiralty claim regarding any damages stemming from its increased exposure to Probulk and Phoenix, it could not maintain a Rule B attachment for those claims. *Id.* This ruling had the effect of reducing Plaintiff's attachment to $143,055, which represented the amount of its alleged lost profits. *Id.*

While the District Court's ruling was on appeal, the Second Circuit overruled that circuit's well-settled practice of restraining wire transfers under Rule B. *Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58 (2nd Cir. 2009). As a result, the Second Circuit vacated the District Court's ruling and remanded the case for further ruling in light of the Second Circuit's recent decision. (Rec. Doc. 29 at 5). The District Court consequently dismissed the case for lack of jurisdiction. *Id.* at 6.

Frustrated in their efforts to seek an attachment in the Southern District of New York, Plaintiff filed the present action as the result of having located a cargo being purchased by Capex in Louisiana. *Id.* But before this Court could issue an attachment order, the parties agreed to amend the bond from the Southern District of New York to provide security for the present action. (Rec. Doc. 18). As they did in the Southern District of New York, Defendant here moves to reduce that amount of the maritime attachment under Rule E(6) on the ground that Plaintiff's claim is unripe

under English law.

## II. Legal Requirements for a Reduction of Security Under Rule E(6)

Rule E(6) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Foreclosure Actions provides that, "[w]henever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of the security given." Fed.R.Civ.P. Supp. Rule E(6). In a very well-researched opinion, Judge Katzmann of the Second Circuit examined the history of Rule E(6) and concluded that Rule E(6) conferred a great deal of discretion to set or reduce a security even though Rule E(4)(f) granted very limited discretion for vacating attachments. *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transport, N.V.*, 572 F.3d 96, 108 (2nd Cir. 2009).

The reason for allowing discretion under Rule E(6) and not Rule E(4)(f) was that the twin purposes of maritime attachment - establishing jurisdiction over absent defendants and assuring the satisfaction of judgments - were undermined by broad discretion under Rule E(4)(f) but promoted by broad discretion under Rule E(6). *Id.* Specifically the Second Circuit held that when a court "either refuses to issue or vacates an attachment [under Rule E(4)(f)], the court deprives itself of jurisdiction," which frustrates the goal of establishing jurisdiction over absent defendants. *Id.* However, where a court merely reduces the value of security under Rule E(6) it does not affect its jurisdiction at all. *Id.* Furthermore, "[t]he second purpose of maritime attachments is served by a rule that allows courts to set the security at an amount that fairly reflects the plaintiff's likely recovery." *Id.*

Consequently, under Rule E(6) "a court may assess preliminarily the reasonableness of plaintiff's damages claim ... and may weigh this and other equitable considerations when evaluating whether good cause exists to reduce a security." *Id.* at 111. "In making a preliminary assessment

of plaintiff's damages claim, the court should be satisfied that the plaintiff's claims are not frivolous, but it should not require the plaintiff to prove its damages with exactitude." *Id.*

This Court notes the long history of maritime attachments in the Second Circuit and, in the absence of Fifth Circuit authority to the contrary, will follow the reasoning in *Transportes Navieros y Terrestres* when addressing a Rule E(6) motion to reduce security.

### III. Analysis

As a preliminary matter this Court notes that Defendant asserted two arguments for the first time in its Reply brief. (Rec. Doc. 35). In the first of these arguments Defendant argues that the prior New York action has *res judicata* effect on this Court. *Id.* at 10. In the second of these arguments Defendant argues that Plaintiff's counsel should be sanctioned for not disclosing to this Court all of the relevant details of the prior New York action. *Id.* at 10. Since these arguments were first raised in Defendant's Reply brief, this Court will not consider them. However, the Court would like to establish in the record that Plaintiff's counsel was entirely forthcoming in its disclosure of details to this Court regarding the previous action in the Southern District of New York. Furthermore, as Defendant's counsel should be aware, the doctrine of *res judicata* only applies when, among other things, the judgment in the first action is rendered by a court of competent jurisdiction and the first action concluded with a final judgment on the merits. *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir.2000) (citing *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir.1994)). Here the Southern District of New York dismissed the case for lack of jurisdiction, which is not a final judgment on the merits nor a judgment rendered by a court of competent jurisdiction. As a result, the prior proceedings in the Southern District of New York have no *res judicata* effect on the present action.

Moving on to the rest of Defendant's arguments, this Court notes that Defendant's entire line

of argumentation is misconceived. While Defendant has moved for a reduction in the amount of security under Rule E(6), it only cites to cases interpreting Rule E(4)(f). For example, Defendant argues that this Court is required to vacate the attachment under *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd.*, 460 F.3d 434 (2nd Cir. 2006), since that case held that if a plaintiff fails to assert a *prima facie* admiralty claim, the district court *must* vacate any attachment. (Rec. Doc. 35 at 8); *see also Aqua Stoli*, 460 F.3d at 445.

However, *Aqua Stoli* involved a Rule E(4)(f) motion and the Second Circuit has since ruled that the legal standard applicable to Rule E(4)(f) is not applicable to Rule E(6). *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transport, N.V.*, 572 F.3d at 108. Indeed, the Second Circuit clearly held that the limited discretion allowed courts under *Aqua Stoli* would be dangerous if applied to Rule E(6). *Id.* Consequently, the Second Circuit held that under Rule E(6) a district court has broad discretion in determining the appropriate level of security. *Id.* at 111.

Considering the factors applicable to Rule E(6) motions that were laid out in *Transportes Navieros y Terrestres*, this Court finds that Plaintiff's claims for damages are not frivolous. Indeed Defendant does not dispute that it failed to deliver the fourth cargo of petcoke that it was obliged to deliver. That failure consequently caused Plaintiff to possibly breach its charter party with Probulk, who in turn possibly breached its charter party with Phoenix. Plaintiff's claims for $3.124 million reflect both its lost profits and possible exposure in the pending London arbitrations for its breach of its charter party with Probulk. (Rec. Doc. 1 at 4-6). This number was not conjured up, but reflects the actual amounts claimed against Plaintiff in the London arbitration, which are in turn based on rates in the charter parties. *Id*.

Considering other equitable factors, the Court first addresses Defendant's argument that Plaintiff's claims are not ripe under English law and therefore should not be calculated in the security set by this Court. Defendant argues that Plaintiff's claims include indemnity claims, which

5

are not ripe under English law until Plaintiff has actually paid Probulk or Phoenix for the London arbitration claims.  (Rec. Doc. 20-8 at 3).  Plaintiff responds by arguing that they are only asserting a breach of contract claim, which includes two separate types of damage, one being Plaintiff's lost profits and the other being Plaintiff's exposure to Probulk and Phoenix for breach of contract. (Rec. Doc. 29 at 12).  Plaintiff argues that such damages in a breach of contract action accrue at the moment of breach, and are therefore  ripe for adjudication.  *Id.* at 13-16.

Since Defendant was the party that plead English law in this case, it has the burden of proof of establishing it as a matter of fact. *Black Diamond SS Corp. V. Robert Stewarts & Sons, Ltd.*, 336 U.S. 386, 397 ("where less widely recognized rules of foreign maritime law have been involved, the Court has adhered to the general principle that foreign law is to be proved as a fact").  Despite its numerous submissions, Defendant has not carried this burden, as Plaintiff has also provided numerous submissions that contradict Defendant's interpretation of English law.  Even assuming that the claims are not ripe, Defendant does not dispute the viability of these claims.  Since the second purpose of maritime attachments is to assure the satisfaction of judgments, this Court will "set the security at an amount that fairly reflects the plaintiffs' likely recovery." *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transport, N.V.*, 572 F.3d at 108.

Since Plaintiff's claims are not frivolous and Defendant has not shown that Plaintiff is unlikely to recovery on them, Defendant has not shown good cause to reduce the amount of security under Rule E(6).  Moreover, its argument that this Court is required to vacate the attachment under *Aqua Stoli*, is unpersuasive because the Second Circuit explicitly held that *Aqua Stoli* does not apply to Rule E(6) motions.  *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transport, N.V.*, 572 F.3d at 108.

While it would be unfair for Defendant to post security on claims that are obviously unripe, the claims in this case are all set for final hearings this month in London.  (Rec. Doc. 30-1 at 12).

As a result, Defendant will know the full extent of its liability soon, so maintaining the current security would not place it under a significant burden. On the other hand, if the security were reduced to the amount requested, Plaintiff might have difficulty collecting on any award it received from the London arbitrators that included damages from its exposure to Probulk and Phoenix. Therefore, the Court finds that the proximity of the arbitral award and the prejudice Plaintiff would suffer from a reduction in security outweigh any burden to Defendant. *See In re Complaint of Murmansk Shipping Co.*, 2001 WL 699530 at *4 (E.D.La. 2001) (upholding an attachment for indemnity claims because plaintiff had already been sued on the potentially indemnity-triggering liability and because defendant could not point to any exigent circumstances, which would require immediate return of the money attached).

### IV. Conclusion

Accordingly,

IT IS ORDERED that Defendant's Motion is DENIED. (Rec. Doc. 20).

New Orleans, Louisiana, this 13th day of December, 2010.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　**HELEN G. BERRIGAN**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**